Billy MERRITT, Plaintiff-Appellant,

v.

Gordon H. FAULKNER, et al.,
Defendants-Appellees.

No. 81–1136.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1982.

Decided Jan. 6, 1983.

Rehearing and Rehearing En Banc
Denied March 2, 1983.

Joel M. Hellman, Pressman & Hartunian, Chtd., Chicago, Ill., for plaintiff-appellant.

Sabra A. Weliever, Asst. Atty. Gen. of Indiana, Indianapolis, Ind., for defendants-appellees.

Before SWYGERT, Senior Circuit Judge, and CUDAHY and POSNER, Circuit Judges.

SWYGERT, Senior Circuit Judge.

This appeal primarily concerns the right to appointed counsel and the right to a jury trial of an indigent prisoner who seeks relief for the alleged deliberate indifference of prison officials to his serious medical problems. The district court denied the prisoner's request for appointed counsel, as well as his motions for a jury trial, appointment of an independent medical expert, and enforcement of a subpoena. After trial, the district court found for the defendants. We find that the denials of the motions for appointed counsel and for a jury trial were abuses of discretion.

## I

On July 10, 1978, Billy Merritt, a prisoner at the Indiana State Prison, injured his left eye. He complained of blurred vision and was seen, two days later, by Dr. Saylors, a physician on the prison staff. Saylors could not determine whether there was any damage to the eye, but he felt the complaint was serious enough to act on it promptly. He referred Merritt to the prison consultant ophthalmologist, Dr. Houck. Saylors indicated in Merritt's file that the matter was "urgent."

Houck, examining Merritt the next day, found that Merritt had a vitreous hemorrhage in the left eye. About a month after the accident, Houck arranged for Merritt to be tested for sickle cell disease. The test was positive. Houck thought there might be a relationship between the sickle cell disease and the hemorrhaging in the left eye, but he did not know anything about the treatment of sickle cell disease. Houck examined Merritt three times during the next three months, but he did not prescribe any treatment or make any referrals. Saylors described Houck's handling Merritt's medical condition as "unusual." Five months after the injury, in December 1978, Houck referred Merritt to a consulting surgeon for consideration of a vitrectomy, an operation which could remove fluid from Merritt's left eye.

Six weeks later, and more than six months after the accident, Merritt was sent to an Indianapolis hospital for treatment of his left eye. The surgeons at the hospital did not perform a vitrectomy on the left eye. Instead, they performed an argon laser photocoagulation on Merritt's *right* eye, even though his vision in his right eye was 20/25 and he had never complained about his right eye. Following his trip to the hospital, Merritt's vision in his right eye deteriorated, and he became functionally blind in both eyes.

Merritt was examined by Houck about once a month during the next year. Merritt returned to the hospital once and also went to an Indianapolis clinic for further tests and evaluations. No treatment or operation was prescribed by Houck or the

physicians at the hospital or clinic. During this period Merritt, however, was examined by another prison staff physician. This physician noted that Merritt's left eye was still hemorrhaging. Although this doctor referred Merritt to the prison's assistant administrator of medical services for treatment, including surgery, no other operation was performed.

## II

On July 7, 1980 Merritt filed his complaint seeking declaratory and injunctive relief and compensatory and punitive damages for violation of his eighth amendment right.[1] His motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (1976) was granted. The defendants answered by generally denying Merritt's substantive allegations and raising as affirmative defenses that they acted in good faith and that Merritt's blindness was caused by sickle cell disease.

On August 13, 1980 Merritt moved for appointment of counsel. On October 30, 1980 the district court had not ruled on this motion, and Merritt moved for appointment of two prison inmates as lay assistants, expressly stating that the lay assistants did not take the place of appointed counsel. This motion was granted. On December 15, fifteen days before trial, Merritt's motion for appointed counsel was denied. In its order, the court ruled: "The appointment of counsel in a civil action is a matter within the discretion of the district court. It is a privilege and not a right."

On August 26, 1980, nineteen days after the defendants had answered the complaint, Merritt made a demand for jury trial pursuant to Fed.R.Civ.P. 38(b). The demand was stricken as untimely on October 1. Merritt moved for reconsideration explaining that he was blind, and that, because he had to rely on a lay advocate to present motions to the court, his failure to make a timely jury demand was excusable. The motion for reconsideration was denied the next day.

Trial was held on December 30, 1980. Merritt presented evidence through nine witnesses, three of whom were the defendants. The court entered judgment for the defendants at the close of trial, based upon oral findings of fact. Merritt appealed to this court and counsel was appointed to represent him here.[2]

## III

Indigent civil litigants have no constitutional or statutory right to be represented by a lawyer. Nevertheless, particularly when rights of a constitutional dimension are at stake, a poor person's access to the federal courts must not be turned into an exercise in futility. *See Bounds v. Smith,* 430 U.S. 817, 821–24, 97 S.Ct. 1491, 1494–1496, 52 L.Ed.2d 72 (1977); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972). This principle of meaningful access is reflected in many decisions by the United States Supreme Court and by this court. Congress, in 28 U.S.C. § 1915 (1976), has indicated that the federal courts must be a judicial forum truly available to the rich and poor alike.

In some civil cases meaningful access requires representation by a lawyer. In *Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932), Justice Sutherland observed that:

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel

---

1. The defendants were: Gordon Faulkner, Commissioner of the Indiana Department of Corrections; Jack Duckworth, Warden of Indiana State Prison ("ISP"); Ronald Freake, ISP Hospital Administrator; Dr. John Saylors, ISP Chief General Physician; Dr. O.D. Reed, ISP Optometrist; Dr. R.S. Houck, ISP Ophthalmological Consultant; and Dr. Nghia Mai, ISP General Physician.

2. The court wishes to thank attorney Joel M. Hellman for his assistance.

he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he [sic] have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more is it of the ignorant and illiterate, or those of feeble intellect.

The logic which propelled the Supreme Court to move from *Powell* (right to counsel in capital prosecutions), to *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel in all felony prosecutions), to *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (right to counsel in cases in which the defendant receives a prison sentence), is no less compelling when applied to these cases.

Even when there is no absolute right to counsel, *see, e.g., Scott v. Illinois,* 440 U.S. 367, 369, 99 S.Ct. 1158, 1159, 59 L.Ed.2d 383 (1979) (no right to counsel when potential prison sentence is not actually imposed), the Court has made it clear that the circumstances of a particular case may make the presence of counsel necessary. In *Gagnon v. Scarpelli,* 411 U.S. 778, 787–91, 93 S.Ct. 1756, 1762–1764, 36 L.Ed.2d 656 (1973), for example, the Court found no absolute right to counsel in parole revocation proceedings. Nevertheless, a flexible case-by-case approach to the question of appointed counsel sensitive to the ability of the parolee to present his case was constitutionally necessary. *Id.*

One important reason for representation by counsel is ensuring the efficacy and ac-

curacy of the factfinding process. *See Scarpelli, id.* Quite often the factual and legal issues in a civil case are more complex than in a criminal case. *See* Note, *The Indigent's Right to Counsel in Civil Cases,* 76 Yale L.J. 545, 548 (1967). This often will be true in cases presenting constitutional questions. Indeed, surviving a critical motion to dismiss under Fed.R.Civ.P. 12(b)(6) may well depend upon the ability to perform legal research and present sophisticated legal arguments in such doctrinally complex areas as prisoner medical rights or free speech. These are skills which a layman often may not have and in which a lawyer receives professional training.[3]

## IV

■ It is within this context that this circuit has fashioned standards for the exercise of discretion in considering whether to appoint counsel for indigent civil litigants in the federal courts under 28 U.S.C. § 1915(d) (1976).[4] In *Maclin v. Freake,* 650 F.2d 885 (1981) (*per curiam*), we set forth and applied five nonexclusive factors which a district court should consider in ruling upon such a request. *See also McKeever v. Israel,* 689 F.2d 1315 (7th Cir.1982). These factors are: (1) whether the merits of the indigent's claim are colorable; (2) the ability of the indigent plaintiff to investigate crucial facts; (3) whether the nature of the evidence indicates that the truth will more likely be exposed where both sides are represented by counsel; (4) the capability of the indigent litigant to present the case; and (5) the complexity of the legal issues raised by the complaint. *Maclin,* 650 F.2d at 887–89.

■ Analysis of these five factors indicates that the district court abused its discretion when it denied Merritt's request for appointed counsel. First, Merritt has

---

**3.** The problem is compounded by the inequality which results when the defendant, most often the state, is represented by counsel and the indigent civil litigant is not. An underlying assumption of the adversarial system is that both parties will have roughly equal legal resources. This assumption is destroyed when only one side is represented. *See Bounds v.*

*Smith,* 430 U.S. 817, 826, 97 S.Ct. 1491, 1497, 52 L.Ed.2d 72 (1977).

**4.** Section 1915(d) provides in relevant part: "The court may request an attorney to represent any such person unable to employ counsel . . ."

presented a colorable claim for relief. One of the chief questions in this case can be phrased in many ways: (1) whether the defendants acted with deliberate indifference to Merritt's serious medical needs, (2) whether defendants' conduct was an inadvertent failure to provide adequate medical care or a "wanton infliction of unnecessary pain," or (3) whether defendants acted in conscious disregard of Merritt's medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976); *Wood v. Worachek,* 618 F.2d 1225, 1232–33 (7th Cir.1980); *Green v. Carlson,* 581 F.2d 669, 675–76 (7th Cir.1978); *aff'd,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

Merritt alleged that he received no treatment for six months after the injury to his eye, that the prison officials interfered with his ability to receive proper treatment, and that the defendants' conduct resulted in his blindness. If Merritt had been able to prove these allegations, he would have shown a violation of his eighth amendment rights, and he would have been entitled to relief. In *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981), we considered a claim similar to Merritt's. Duncan had complained of severe pain from an injury, and although he was seen repeatedly by prison doctors, no surgery or treatment was provided. The *Duncan* court ruled that despite the fact that the *pro se* prisoner's complaint failed to use the key legal phrases, the prisoner had presented a colorable claim and dismissal by the district court for failure to state a claim was improper. *Id.* at 654–55.

Second, Merritt is unable to investigate crucial facts. The crucial facts here concern both the conduct of the defendants, the cause of Merritt's blindness, and the standards of medical practice in such areas as the treatment of sickle cell disease and blindness. Consultation with outside medical specialists to develop evidence concerning diagnosis, causation, treatment, and prognosis is obviously beyond the capacity of this blind, indigent, and imprisoned litigant. *See Maclin, supra,* 650 F.2d at 889.

Third, the nature of the evidence is such that the truth will more likely be exposed when both sides are represented by counsel. When properly presented the evidence in this case will consist of quite complex and probably contradictory evidence from medical experts, the plaintiff, and the defendants. Testing their opinions and their credibility will require the skills of a trained advocate to aid the factfinder in the job of sifting and weighing the evidence.

Fourth, neither Merritt nor his lay assistants could present this case properly. The defendants here do not contend that Merritt himself could present his case. How could Merritt read the defendants' documents indicating the results of their examinations of him? Rather, defendants argue that Merritt's two prisoner-lay assistants were competent. The lay assistants, however, were also handicapped by their inability to obtain essential medical evidence from doctors outside of the prison. Depositions as a means of obtaining evidence from such witnesses were avenues completely foreclosed to Merritt and his lay assistants. This was especially critical because the only physicians other than the defendants who examined Merritt were beyond the subpoena power of the court. See Fed.R.Civ.P. 32(a)(3). Moreover, the trial transcript reveals how well meaning but, nevertheless, incompetent the lay assistants were. Cross-examinations of critical witnesses were often muddled and ambiguous. It is obvious that the lay assistants had little understanding of the hearsay rule or of how to present a closing argument. In some cases these skills will be less critical. But here, where complex medical evidence is at the heart of a case, these skills were essential.

Fifth, the legal questions raised by Merritt's complaint, the cause of his blindness and whether defendants acted with deliberate indifference to his injury, are too complex for lay representation. These questions depend upon the subtle appreciation of legal causation and of the duties imposed upon state prison officials by the eighth and fourteenth amendments, an appreciation which neither Merritt nor his lay assistants possessed.

In addition to satisfying the *Maclin* standards on Merritt's most straightforward claim, a careful review of the transcript below reveals a second possible claim, one perhaps more substantial. The transcript reveals that the prison medical authorities were aware of their deficiencies in treating sickle cell disease before Merritt's injury. Recommendations for staff training and equipment had been made to improve the capability of prison medical authorities to treat black inmates suffering sickle cell disease. We, of course, cannot say whether the failure of prison medical officials to act upon these recommendations comprises, in part, a violation of Merritt's eighth amendment rights. But we are sure that presentation of such a claim, in its novelty and complexity would require the assistance of counsel.

## V

We have not answered explicitly the question of whether it is proper and wise for the court of appeals to remand this matter to the district court for the exercise of its discretion. *See McKeever, supra,* at 1323 (Posner, J., dissenting); *Ray v. Robinson,* 640 F.2d 474, 478 (3d Cir.1981); *Heidelberg v. Hammer,* 577 F.2d 429, 431 (7th Cir.1978); *United States v. McQuade,* 579 F.2d 1180, 1181 (9th Cir.1978). The alternative course, followed in *Maclin* and *McKeever,* is to reach the merits of this prisoner's claim for appointed counsel.

We conclude that under the circumstances of this case it is inefficient and unjust to remand the matter to the district court. The facts here are not in dispute and the issue is fully briefed. The only step remaining is the application of the *Maclin*

legal standards to these facts,[5] a task for which our expertise is as great as the district court's. Conceptually this task is similar to considering summary judgment. As demonstrated in Part IV, *supra,* failure to appoint counsel would so clearly be an abuse of discretion that deferral to the district court is unnecessary. The delay and multiple litigation of this issue would not serve the interests of the litigants or of the federal courts. *See* 28 U.S.C. § 2106 (1976); *Grosso v. United States,* 390 U.S. 62, 71–72, 88 S.Ct. 709, 715, 19 L.Ed.2d 906 (1968); *Independent Bankers Ass'n of America v. Heimann,* 613 F.2d 1164, 1167 (D.C.Cir. 1979), *cert. denied,* 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980); *Ferrero v. United States,* 603 F.2d 510, 515 (5th Cir.1979); *In re Hronek,* 563 F.2d 296, 298 (6th Cir.1977).

## VI

The next question is whether the district court abused its discretion when it denied Merritt's jury demand. The defendants argue that denial was proper because Merritt's motion invoked Fed.R.Civ.P. 38(b).[6] Because the rule's ten-day limitation period had passed (by nine days). Merritt had failed to fulfill the rule's mandatory requirements.

■ *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and the importance of the right to a jury provision of the seventh amendment indicate that it was an abuse of discretion to deny Merritt's motion. Under *Haines pro se* pleadings are to be liberally construed. Merritt's motion should have been treated under Fed.R. Civ.P. 39(b).[7] Rule 39(b) grants wide dis-

---

**5.** This distinction may explain the difference between this circuit's treatment of section 1915 appointment of counsel claims in *Maclin* and *McKeever* and appellate treatment in *McQuade* and *Ray, supra.* The *McQuade* and *Ray* courts did not formulate standards for the exercise of discretion under section 1915.

**6.** Fed.R.Civ.P. 38(b) provides, in relevant part:
 Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement

of the action and not later than 10 days after the service of the last pleading directed to such issue.

**7.** Fed.R.Civ.P. 39(b) provides:
 Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the Court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the Court in its discretion upon motion may order a trial by a jury of any or all issues.
 *See also* Fed.R.Civ.P. 6(b).

cretion to the federal courts in considering untimely jury demands. That discretion must be exercised in the context of the interest asserted. A jury trial is not a minor feature of our judicial system. The right of a litigant to have his fellow citizens hear and weigh the evidence is a hallmark of our jurisprudential system. *Swofford v. B. & W., Inc.,* 336 F.2d 406, 409 (5th Cir. 1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). *See generally Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 339–344, 99 S.Ct. 645, 655–658, 58 L.Ed.2d 552 (Rehnquist, J., dissenting) (history of constitutional right to jury trial).

▉ In the absence of strong and compelling reasons to the contrary, untimely jury demands should be granted. *Swofford, supra,* 336 F.2d at 409. The exercise of discretion requires an analysis of the facts of the particular case. As one commentator has noted, "[t]he court ought to approach each application under Rule 39(b) with an open mind and an eye to the factual situation in that particular case." 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2334, at 116 (1971). The mere fact, however, that plaintiff's motion for a jury trial was "too late" is neither a strong nor a compelling reason to deny the fundamental right to a jury trial. *Hensley v. Ellenburg,* 57 F.R.D. 212 (E.D.Tenn.1972). Untimely jury demands have been granted in a variety of circumstances. *See Ford v. Breier,* 71 F.R.D. 195 (E.D.Wis.1976) (motion for jury trial granted where it was brought by new counsel without delay and was unopposed); *United States v. Mesna,* 11 F.R.D. 86 (D.Minn.1950) (motion for jury trial granted where it was only two and one-half months late and opponent would suffer no prejudice); *Arnold v. Trans-American Freight Lines,* 1 F.R.D. 380 (W.D.Mich.1940) (motion for jury trial granted where failure to make jury demand was the result of confusion among counsel).

▉ There are no strong or compelling reasons for denying Merritt's motion for a

jury trial. The defendants rely upon cases which hold that mere inadvertence of counsel is not enough to support a rule 39(b) motion. *Bush v. Allstate Ins. Co.,* 425 F.2d 393, 395–96 (5th Cir.), *cert. granted,* 400 U.S. 833, 91 S.Ct. 64, 27 L.Ed.2d 64 (1970); *Noonan v. Cunard Ins. Steamship Co.,* 375 F.2d 69, 70 (2d Cir.1967); *Todd v. Lutz,* 64 F.R.D. 150, 152 (W.D.Pa.1974); *A. & W. Oil Co. v. Texaco, Inc.,* 51 F.R.D. 283, 286 (W.D. Ark.1970). But this is not a case of mere inadvertence of counsel. This motion was made by a blind *pro se* litigant who indicated from his first pleadings, through his requests for counsel, that he did not feel competent to represent himself in court.

Defendants' alternative argument is that the motion was properly denied because of court congestion. In *Wilson v. Corning Glass Works,* 195 F.2d 825, 827 (9th Cir. 1952), defendants' authority for this proposition, the plaintiff was represented by counsel, the bench trial date was already set before the motion was made, and the district court was severely overworked and understaffed. *Wilson* is inapposite. Here a *pro se* litigant's motion was made more than one month prior to the assignment of a trial date. (Both the denial of the August 26 motion for a jury trial and the trial date were set on October 1.) The mere fact that it was more convenient for the district court to hear Merritt's claim at a bench trial during its previously scheduled Christmas term at the prison is not the sort of strong and compelling reasons which rule 39(b) requires. Regardless of location, bench trials are always more convenient. Under defendants' reasoning rule 39(b) would be a nullity.

## VII

Merritt raises two additional objections to the proceedings below. The first concerns the district court's refusal to order a medical examination by an independent physician, pursuant to Fed.R.Civ.P. 35(a).[8] The

---

8. Fed.R.Civ.P. 35(a) provides in pertinent part: When the mental or physical condition . . . of a party, or of a person in the custody or legal

control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental ex-

primary thrust of the claim appears to concern the payment of the medical experts' fees. Merritt recognizes that the claim is novel. It is unwise to reach this issue now. At his new trial, Merritt will be represented by counsel who has a variety of options unavailable to Merritt, including depositions and contingency fee or pro bono services by physicians. Only when these more traditional avenues have been pursued would it become necessary to consider under what circumstances a court can or should appoint a medical expert for an indigent litigant.

The last objection concerns the district court's refusal to enforce a subpoena. The district judge denied the motion for enforcement because Merritt could not pay the witness fees. The question of whether and when the funds for witness fees must be advanced to a federal civil indigent litigant is not a simple one. 28 U.S.C. § 1915(c) (1977) [9] may provide a basis. See *Morrow v. Igleburger*, 584 F.2d 767, 772 n. 7 (6th Cir.1978), *cert. denied*, 439 U.S. 1118, 99 S.Ct. 1027, 59 L.Ed.2d 78 (1979); *Marks v. Calendine*, 80 F.R.D. 24, 27 (N.D.W.Va. 1978). The record and the briefs are insufficient for us to reach this matter. Again, we trust that appointed counsel will be able to find an alternative solution to this problem or create a record and present arguments indicating the bases and sources for an advancement of witness fees and why the subpoena should be enforced.

The judgment of the district court is hereby reversed. This cause is remanded for a new trial in which a jury and appointed counsel are provided to the plaintiff-appellant. Circuit Rule 18 will apply.

CUDAHY, Circuit Judge, concurring:

The question of appointment of counsel in this case is close, not because I am convinced that the plaintiff does not have a promising malpractice case,[1] but because the plaintiff may have difficulty in successfully bringing his proof within the Eighth Amendment.[2] Nonetheless—and particularly since we are dealing here with a blind man—Judge Swygert's analysis of the *Maclin* factors is entirely persuasive.[3]

But I write separately by way of comment on Judge Posner's economic analysis in this case and in his dissent in *McKeever v. Israel*, 689 F.2d 1315 (7th Cir.1982). First, I cannot agree that the plaintiff, who complained of blurred vision in his left eye, had surgery on his good right eye and is now blind in both eyes, would have no chance in a malpractice case before a jury. Even if, as the dissent suggests, the plaintiff's medical care was "solicitous," it is not readily apparent to me why a jury could not find that someone had made a mistake and award generous damages. At least, I suspect that a man who became blind after medical procedures, but not in prison, might have had little difficulty in acquiring a lawyer on a contingent fee basis.

Perhaps, however, the laws of economics take a different turn when prison walls intervene. Not entirely facetiously, it occurs to me that the barriers to entry into

amination by a physician or to produce for examination the person in his custody or legal control.

**9.** Section 1915(c) reads in pertinent part: "Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases."

**1.** It is true that Judge Sharp said at one point that he would direct a verdict if this were a malpractice case, but he also said, "The question in this case is not whether there was medical malpractice, the question here is whether or not there was by any of the defendants a deliberate indifference to serious medical needs." Appellants' App. at D–8. I do not believe it can be said that Judge Sharp made a "finding" about medical malpractice.

**2.** The evidence that the prison medical authorities were aware of their deficiencies in treating sickle cell disease before Merritt's injury may fortify the Eighth Amendment claim.

**3.** I also note that this case appears to be controlled by our recent decision in *McKeever*. If anything, the defendant in this case has a much stronger claim, based upon the *Maclin* test, to having an attorney appointed to represent him than did the defendant in *McKeever*. *McKeever is the law of this circuit*, and it clearly mandates the result which we reach today.

the prison litigation market might be very high. I think our knowledge of the state of effective competition among attorneys for the business of prisoners with legal claims is slight. Hence, I am not prepared to consign to the verdict of the marketplace the issue of prisoner representation; and this is, of course, not the law.

The dissent suggests that the court's furnishing the plaintiff with the names of lawyers in the area might be a suitable substitute for appointment of counsel. But is an incarcerated blind man in a position to take advantage of such information? Are prison authorities prepared to facilitate (or the bar associations to tolerate) the solicitations of prisoners by hungry lawyers waving contingent fee contracts? And are the prison authorities ready to accept a system of representation which would make demands for substantial damages *de rigueur?*

If there are real economic opportunities for lawyers in representing prisoners, then one appointment to such a task might open the door to later remunerative activity within prison walls. Perhaps appointment in such circumstances is not such a hardship after all.

In any event, justice demands that, in some cases, representation be supplied. I agree that these cases should be carefully limited. But we cannot assume that all prisoners' suits are unmeritorious, and we should resolve any doubts in favor of a prisoner whose complaint is blindness. If we are to assume that prisoners' suits are universally unmeritorious, the *Maclin* factors would not require appointments in virtually any set of circumstances. The fact is that a number of claims by prisoners may be important and meritorious, but may not call for copious damages. In these cases, in the probably typical situation of poor communication between prisoners and nearby lawyers, in the perhaps not atypical situations where even hungry lawyers may want more compensation than prisoners can provide and in certain other situations, appointment of counsel, subject to the *Maclin* factors, is still the preferable approach. I am sure we would all be pleased by a self-financing system of justice providing effective access to the courts even within prisons. But I see no immediate prospect of justice being entirely a function of a market theory which may bear little relation to the reality of the prison setting. Therefore, I think it is appropriate here simply to apply the *Maclin* factors and appoint counsel.

POSNER, Circuit Judge, concurring in part and dissenting in part.

I agree that it was an abuse of discretion for the district judge to deny Merritt's untimely request for a jury trial. A prisoner not represented by counsel, even one assisted as here by "lay advocates" (also known as "jailhouse lawyers"), is entitled to every indulgence in the court's procedural rulings. See *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982). This is the corollary to a policy, which I favor, of not appointing counsel in civil cases except in the most unusual circumstances. It is unfair to deny a litigant a lawyer and then trip him up on technicalities. I doubt, though, that this case will go to trial again. Probably the defendants will move for summary judgment; and for reasons to appear in a moment, probably the motion will be granted.

I disagree, however, that it was an abuse of discretion for the district court not to appoint counsel for Merritt. For reasons explained in my dissenting opinion in *McKeever v. Israel,* 689 F.2d 1315, 1324–25 (7th Cir.1982), I believe the presumption should be against appointment of counsel in prisoner civil rights cases. One of the reasons given in my dissent in *McKeever* is especially applicable to this case. I said that a prisoner who has a good damages suit should be able to hire a competent lawyer and that by making the prisoner go this route we subject the probable merit of his case to the test of the market. Merritt alleges that the defendants are legally responsible for his blindness. If this were so, he would have a case that was attractive to many personal-injury lawyers, even apart from the fillip of an award of attorney's fees if the plaintiff prevails that 42 U.S.C.

§ 1988 adds almost as a matter of course (see *Kerr v. Quinn,* 692 F.2d 875 (2d Cir. 1982)) when a personal-injury case is brought under one of the civil rights acts. If Merritt cannot retain a lawyer on a contingent fee basis the natural inference to draw is that he does not have a good case.

It is reasonably clear to me that he does not have a good case, so I am not surprised that he did not find a private lawyer willing to represent him. The pathetic facts recited in the majority opinion are not the facts found below. They are the facts Merritt would have liked the district court to find. The district court found that the cause of Merritt's blindness was and remains unknown, that he received continuous, competent, and in fact solicitous medical care, some of it at an outstanding university hospital, and that if this were a medical malpractice case the defendants would be entitled to a directed verdict in their favor. *A fortiori,* Merritt failed to prove a "deliberate indifference" to his medical needs, as would be necessary to show a violation of the Constitution and hence of 42 U.S.C. § 1983, the civil rights statute under which this suit was brought. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). As Merritt's appeal does not challenge the district court's findings, we ought not adopt a version of the facts that the district court rejected. And we ought not draw inferences so fanciful that Merritt's court-appointed counsel in this court does not so much as hint that they might have any basis in fact. I refer to the court's suggestion that the prison officials may have known that their medical facilities were inadequate yet failed to take steps to remedy this deficiency.

The majority regards the right of an indigent prisoner to appointment of counsel in a civil case as a natural, maybe inevitable, outgrowth of the Supreme Court's decisions entitling indigent criminal defendants to assistance of counsel. But all other differences between the civil and criminal settings to one side, a plaintiff in a damages case has better access than a criminal defendant to the private market in lawyers. The criminal defendant does not get a sum of money out of which he can pay his lawyer if he wins. But a prisoner who can prove he was wrongfully blinded can look forward to a very big money judgment to share with his lawyer and to an award of attorney's fees under section 1988 besides. I do not think we need worry that a prisoner who has a good case will have difficulty getting the name of a lawyer. Merritt himself had the name of a lawyer—he moved for the appointment of a specific lawyer. If Merritt had had a good case this or another lawyer would have been happy to handle it on a contingent-fee basis, with the prospect of an award of attorney's fees under 42 U.S.C. § 1988 as an additional inducement. The picture of a blind man in hopeless quest of a lawyer who will handle his pitiable cause is not realistic. Every prisoner knows at least one lawyer: the lawyer who represented him at his criminal trial. Every prisoner has access to the jailhouse lawyers, who can put him in touch with lawyers on the outside. There is no suggestion in this case that Merritt in particular or prisoners in general have difficulty getting the names of lawyers; but if they do, let us order the district judges to supply them with names; let us not decree a lawyers' draft.

I said in my *McKeever* dissent that I was afraid that our circuit is moving toward routine appointment of counsel in prisoner civil rights cases. This case takes us another step down that road. The district judge in this case unlike the judge in *McKeever* exercised his discretion on the question whether to appoint counsel. But that exercise is given no weight. The panel substitutes its own judgment; it honors the abuse of discretion standard (*Maclin v. Freake,* 650 F.2d 885, 886 (7th Cir.1981) (per curiam)) in the breach. Although it lists five reasons why it would be an abuse of discretion not to appoint counsel to represent Merritt, four ring changes on the same theme: the complexity of the issues. (The fifth is that if the allegations of the complaint are correct Merritt has a good case. This will be true in every case where the complaint states a cause of action under

federal law.) The complexity stems from the fact that the issues are medical, and hence technical. Thus the analysis in the majority opinion implies that a prisoner is entitled to appointment of counsel in any personal-injury case where a medical issue is raised.

The court states: "An underlying assumption of the adversarial system is that both parties will have roughly equal legal resources." This has never been an assumption of the adversarial system. We do not put a cap on the amount of money that a litigant can spend on lawyers; we do not inquire whether the litigants had roughly equal legal resources; we allow one to outspend the other by as much as he pleases. We count on the courts not to be overawed by the litigant with the higher-priced counsel. But, whether it is right or wrong, the goal of equalizing legal resources implies, I admit, that every indigent civil litigant should have, at the very least, counsel appointed for him; and I worry that this proposition may be the unstated premise of the majority opinion—the stated but unsupported premise of which is that Merritt had a good case yet, mysteriously, could not find a lawyer to represent him.

We are embarking on a program of appointing counsel for prisoners as a matter of course in civil cases without even considering the practical consequences. We ought to consider the burden on the bar in areas—most of which are not populous, and do not have large numbers of lawyers— where the major prisons in this circuit are located, such as Michigan City, Indiana, where Merritt is imprisoned; and we ought to consider the potential impact on the dockets of our busy district courts, and ultimately on our crowded docket, of "lawyerizing" prisoner civil litigation. I do not find a consideration of these issues in the majority or concurring opinion. We cannot expect Congress to dress the federal judiciary's self-inflicted wounds.

The fact that Merritt is blind, though it contributes to the pathetic aura that the majority opinion radiates and though it is seized upon by the concurring opinion as a fact to distinguish this from the myriad other cases controlled by the logic of the majority opinion, has no relevance to the issues in this case—except, as I have emphasized, that it implies that Merritt could have hired a lawyer if he had had a good case in law. The lay advocates provided his eyes, and more: a blind prisoner represented by two lay advocates is better able to present an effective case than a prisoner who can see but, not being assisted by lay advocates or anyone else, must present his case by himself.