CRESCENT CORPORATION, Plaintiff,

v.

PROTOR & GAMBLE CORPORATION[1]
and Huber, Hunt & Nichols,
Defendants.

No. 85 C 8930.

United States District Court,
N.D. Illinois, E.D.

Feb. 6, 1986.

David L. Campbell, Campbell & Campbell, St. Louis, Mo., Joseph J. Banks, Jr., Carpentersville, Ill., for plaintiff.

Hugh L. Moore, Lord, Bissell & Brook, Chicago, Ill., Alan H. Goldstein, Diane Hubbard Kennedy, Susan Brooke, Dutton & Overman, Indianapolis, Ind., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Crescent Corporation ("Crescent") has sued Procter & Gamble Company ("P&G") and Huber, Hunt & Nichols, Inc. ("HH&N") in a two-count Complaint arising out of Crescent's engineering, design,

---

1. This Court is compelled to follow the "Protor" misspelling of "Procter" as embodied in the original caption of this case. However, the text of this opinion will use the correct spelling, rather than either the typographical error in the caption or the equally incorrect "Proctor" (the erroneous version appearing in the body of the Complaint).

manufacture and installation of the curtain-wall for P&G's office building in Cincinnati, Ohio, on which HH&N assertedly acted as P&G's agent:

1. Count I seeks quantum meruit recovery from P&G for over $2 million in extra materials and services going far beyond the original contract requirements.

2. Count II seeks damages (both compensatory and punitive) against both P&G and HH&N for fraud: It alleges false representations that a change order would be executed covering the extras, in reliance on which representations Crescent went ahead with the work.

Defendants removed the case from its original forum (the Circuit Court of Kane County, Illinois) to this District Court, then moved to dismiss or alternatively to transfer this action to the Southern District of Indiana, Indianapolis Division. For the reasons stated in this memorandum opinion and order, such transfer (rather than dismissal) is granted.

Defendants' alternative prayer for relief does not advance a 28 U.S.C. § 1404(a) motion in conventional form—the statutory successor to the forum non conveniens doctrine, allowing transfer as a matter of balancing conveniences. Defendants' focus is rather on the forum selection clause (the "Clause") in Article 9 of the "Subcontract Agreement CF19A" (the "Subcontract") between HH&N as "Contractor" and Crescent as "Subcontractor":

Any suit brought for any breach of the Subcontract and any litigation arising under the Subcontract is here agreed to be maintained in any court of competent jurisdiction in the County and State shown as Contractor's address, Article I., Recitals, CF19A.

HH&N's address in the cited portion of the Subcontract was shown as 2450 South Tibbs Avenue, Indianapolis, Indiana 46241.

Most of the Complaint's allegations characterize HH&N as P&G's "agent" (see, e.g., Complaint ¶¶ 4, 6, 7 and 8) and hence assert the Subcontract was entered into "for and on behalf of P&G" (Complaint ¶ 12). All this is of a piece with the allegation (Complaint ¶ 6) that the earlier contract between P&G and HH&N (though it may well have been a construction contract under which P&G was designated as owner and HH&N as contractor) was an "on-going association" the Complaint refers to as the "P&G Enterprise." Consistently with those allegations, Crescent alleges the extras that form the gravamen of the Complaint were furnished "at the special instance and request of P&G and Huber [HH&N], acting in the furtherance of the affairs of the P&G Enterprise" (Complaint ¶ 18), and the same paragraph alleges those extras "were agreed to, approved by and accepted by P&G and Huber in the furtherance of the affairs of the P&G Enterprise, and...now benefit P&G and Huber and the P&G Enterprise...."

Crescent's Count I is labeled, and is alleged in part in the form of, a quantum meruit claim—a claim based on benefits conferred by Crescent on P&G. But it cannot be gainsaid the Count I claim really asserts a "breach of the Subcontract" within the meaning of the Clause. Indeed the claim, though not articulated in a conceptually precise manner, essentially says P&G was bound by the Subcontract because HH&N entered into it for P&G's benefit. Complaint ¶ 19 therefore calculates and alleges the amount due in terms of Crescent having fully performed all work under the Subcontract and thus being "entitled to the full payment of all sums remaining unpaid therefor."

In much the same way, Count II does not charge fraud in the *inducement* of the Subcontract (the kind of claim that ordinarily precludes a defendant from bootstrapping itself by seeking to invoke a forum selection clause in the very contract that is under attack and that would be vitiated if the fraud-in-the-inducement claim were upheld). Instead Count II actually charges defendants with having violated their contractual obligation to sign change orders for authorized extras (see Subcontract Article VI and, presumably, Subcontract Terms and Conditions Article

18[2]). Whether viewed in that manner or as the kind of fraud claim Crescent asserts, Count II plainly constitutes "litigation arising under the Subcontract" for purposes of the Clause.

■ At least in surface terms, then, the just-completed analysis brings the Clause potentially into play as to this entire litigation. Before this opinion turns to whether that potentiality translates into actuality, or to the impact on this lawsuit if it does, a threshold question must first be considered: the enforceability vel non of the Clause. In that respect Crescent's President John Wegman ("Wegman") has stated by way of affidavit that HH&N and Crescent had arrived at an oral agreement for the curtainwall long before the Subcontract was entered into (or even drafted). As Wegman's Affidavit puts it:

9. Subsequent to the reaching of the aforesaid oral agreement, but prior to the receipt of any draft of Exhibit A [the Subcontract], and prior to the receipt of any of the contents of Attachment III to Exhibit A hereto [which includes the Clause], and specifically Exhibit C hereto, Crescent expended in excess of $500,000 on the design, engineering, fabrication, manufacture and providing of labor and materials to the Proctor & Gamble Project.

10. It was not until the basic contract terms concerning price and scope of work had been negotiated, the aforesaid oral agreement and understanding reached with respect thereto, and Crescent had already expended the aforesaid significant sums of money in the engineering, design, and construction of the Proctor & Gamble Project, that the written contract (Exhibit A hereto) and the attachments thereto (including Attach-

ment III and Exhibit C hereto) was given to Crescent to sign.

11. None of the contents of Attachment III to the Contract (Exhibit A hereto), and specifically none of the contents of Exhibit C hereto was the subject of any negotiation or of any discussion between any representative of Crescent and any representative of HH&N prior to the completion of the construction of the Proctor & Gamble Project.

12. None of the contents of Attachment III to the Contract (Exhibit A hereto), and specifically the contents of Exhibit C hereto, were subject to any negotiation between the parties, but all of such terms were presented to Crescent by HH&N on a take it or leave it basis.

But that version has proved to be no more than a half-truth. It turns out the Subcontract (including the Clause) was part of the "Bid Package" that had been tendered to Crescent as the predicate for its initial formulation of a bid for the curtainwall work (Randall Ket ("Ket") Jan. 10, 1986 Aff. ¶ 2). Indeed the ultimate Subcontract specifically included all the terms and conditions of the Bid Package. Thus Crescent has been shown[3] to have had full knowledge of the Clause before it ever became committed to the project and proceeded with its work, even though the Subcontract was not formally signed until March 1983. And as for its contract-of-adhesion type claim (Wegman Aff. ¶ 12), Ket's affidavit directly belies Wegman's conclusory statement by offering *facts*. It establishes that Crescent successfully negotiated out part of the terms HH&N had proposed for the Subcontract (Ket Aff. ¶ 5), but that Crescent made no complaint at all about (nor did it even discuss) the Clause (Ket Aff. ¶¶ 4, 9). In that context, any significance to be gleaned from the absence

---

**2.** Except for the page of the Subcontract Terms and Conditions that includes the Clause (Article 9), this Court has been provided only the Index page to the Terms and Conditions, which lists Article 18 as "Changes."

**3.** It is significant that though Crescent filed an unbidden surreply February 3, complaining of certain statements in defendants' Reply Memo-

randum, it has said nothing whatever to challenge defendants' factual assertions described in this paragraph of the text. Because those assertions really explain the significance of, rather than creating a factual dispute as to, the partial story offered by Wegman, any rule that might oblige this Court to accept Crescent's version of controverted facts does not come into play.

of any negotiation or discussion concerning the Clause (Wegman Aff. ¶ 11) cuts against—rather than in favor of—Crescent.

Under these circumstances, Crescent's challenge to the Clause's enforceability must fail. See *Snyder v. Smith,* 736 F.2d 409, 419 (7th Cir.1984), citing and quoting from *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12, 15–19, 92 S.Ct. 1907, 1914, 1916–18, 32 L.Ed.2d 513 (1972); *Clinton v. Janger,* 583 F.Supp. 284, 288 (N.D. Ill.1984), also relying on the "landmark decision" in *Bremen.* What remains, then, is to analyze the effect of the Clause on this action.

First, P&G as well as HH&N clearly has the right to invoke the Clause. See the application of forum selection clauses to non-parties in such cases as *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202–03 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *Dukane Fabrics International, Inc. v. M.V. "Hreljin,"* 600 F.Supp. 202, 203 (S.D.N.Y.1985); *Clinton,* 583 F.Supp. at 290. Crescent is not entitled (1) to draw P&G into litigation on the theory HH&N was P&G's agent in executing the Subcontract, and then (2) to disavow applicability of the Clause because P&G was not a formal contracting party.

Second, the applicability of the Clause is not impaired by Crescent's statement of its claims in other than straight breach of contract terms. That proposition

was scotched in *Coastal Steel,* 709 F.2d at 203 and cases there cited; see also *Clinton,* 583 F.Supp. at 287–88. This opinion's earlier discussion has established the coverage of each of Crescent's claims by the terms of the Clause, and Crescent's claim to the contrary "ignores the reality that the [Subcontract] is the basic source of any duty to [Crescent]" (a quotation adapting *Coastal Steel,* 709 F.2d at 203 to this case).

Only one issue remains to be dealt with. *Snyder,* 736 F.2d at 419 referred to cases that "have considered forum selection clauses to be a type of venue provision," but our Court of Appeals did not there find it necessary to decide whether such a clause constitutes "venue" within the meaning of Fed.R.Civ.P. 12. Some other courts confronted with the situation posed by the present motion have opted for dismissal, while still others have looked to 28 U.S.C. § 1406(a) and have transferred the action to the forum contracted for by the parties. This Court views the latter alternative as the more reasonable response.[4] Accordingly this action is transferred to the United States District Court for the Southern District of Indiana, Indianapolis Division.

---

4. Crescent urges its desperate economic straits make it impossible for it to pursue its claim anywhere but in this District Court (Wegman Aff. ¶ 16–19). It is Crescent's lawyer's "considered opinion" (David Campbell Aff. ¶ 8), and based on that advice Wegman believes (Wegman Aff. ¶ 20), that Crescent cannot secure counsel in the Southern District of Indiana. That argument calls to mind the debate about the availability of legal representation in *Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.1983). True enough, in the prisoner-representation context of that case this Court finds Judge Cudahy's concurring opinion, *id.* at 768–69 far more persuasive than Judge Posner's dissent, *id.* at 769–71. But Judge Posner's marketplace approach to access to legal services, as expressed in that and other cases, has substantial force in the context of commercial litigation:

1. *Merritt, id.* at 769: "I said [dissenting in *McKeever v. Israel,* 689 F.2d 1315, 1324–25 (7th Cir.1982)] that a [plaintiff] who has a good damages suit should be able to hire a competent lawyer and that by making the [plaintiff] go this route we subject the probable merit of his case to the test of the market."

2. *McKeever,* 689 F.2d at 1324: "Where damages are sought, the [plaintiff] should have no difficulty finding a lawyer willing to take his case on a contingent-fee basis, provided the case has some merit."

This Court is similarly unpersuaded that there is a demonstrated total unavailability of Indiana counsel, as suggested by Crescent. It declines the invitation of Crescent Mem. 10 to dismiss rather than transfer this action.