833 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Milburn L. EDWARDS, Plaintiff-Appellant,
v.
Lt. L.A. SIMPSON, et al Defendants-Appellees.
 No. 85-5944.
 United States Court of Appeals, Sixth Circuit.
 Nov. 19, 1987.
 
 Before BOYCE F. MARTIN, Jr., NATHANIEL R. JONES and ALAN E. NORRIS Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Milburn L. Edwards, brought this action under 42 U.S.C. Secs. 1983 and 1985(2). In his pro se complaint Edwards alleged that the defendants, two City of Memphis police officers, L.A. Simpson and G.B. Logan, conspired to have him charged with a rape which the officers knew he did not commit.[1] After the completion of some discovery, the district court granted defendants' motion for summary judgment. On this appeal, Edwards challenges the grant of summary judgment as well as the district court's denial of his motion for appointment of counsel. Finding no error, we affirm.
 
 I.
 
 2
 The facts underlying plaintiff's civil rights claim against the two officers can be briefly stated. On July 16, 1980, plaintiff was arrested at the Perkins Woods apartment complex for attempted burglary. In the report filed by the arresting officer, it was observed that Edwards fit the description of the individual suspected of committing several rapes in the area, including one within the preceding week at the same apartment complex. Later that day, a lineup was held at Memphis Police headquarters where Myra Ann Adams, the victim of the rape at the Perkins Woods complex, positively identified Mr. Edwards as the person who had raped her on July 10, 1980. As a result of this identification, Edwards was charged with the rape of Adams.
 
 
 3
 On July 30, 1980, two weeks after Edwards was charged, several Memphis police officers were assigned to investigate rapes that had occurred recently in the Memphis area. Two of the officers assigned to this duty were defendants Simpson and Logan. Neither Simpson nor Logan was involved with this case prior to July 30th, and it appears that neither officer was present at the July 16th lineup.
 
 
 4
 In early August 1980, a preliminary hearing was held regarding the charge pending against Edwards. While it is not entirely clear from the record, it is apparent that Simpson and Logan were present at this hearing. At the preliminary hearing Adams again identified Edwards as the person who had raped her. Consequently, Edwards was bound over to the Shelby County Grand Jury and indicted for the rape.
 
 
 5
 Edwards was tried in April, 1981 for the Adams rape, and was acquitted by the jury. Both Simpson and Logan testified at the trial, as did Adams herself. Apparently, one of the primary reasons for the acquittal was that during cross-examination Adams waivered a bit regarding her ability to observe her attacker, a fact which detracted somewhat from the certainty which had characterized her prior identifications of Edwards.
 
 
 6
 Armed with his acquittal on the rape charge, Edwards, proceeding pro se, brought this action on December 16, 1981. At that time Edwards was incarcerated in the Shelby County Jail for unrelated offenses. In his complaint, Edwards alleged that Simpson and Logan, while having knowledge that he was not involved in the rape, nevertheless conspired to have him charged with the crime. According to Edwards, the defendants coerced Myra Adams into identifying him as the rapist. Edwards claims that this coercion became evident at his trial when Adams stated (according to Edwards' version of the testimony) that she could not see her attacker. Consequently, Edwards reasons that Adams' prior identifications of Edwards must have been coerced by Simpson and Logan. Edwards bases his belief that Simpson was involved in the alleged conspiracy to coerce Adams, upon a statement Simpson had allegedly made to Edwards' father that Edwards was not responsible for the Adams rape. As for Logan, he is tied to the conspiracy on the basis of his participation in the investigation, his testimony at the criminal trial, and on Edwards' belief that Logan might have been present at the July 16th lineup.
 
 
 7
 In an order dated December 21, 1981, the district court ruled that Edwards' claim against Simpson and Logan stated a federal cause of action, and, because of Edwards' pauper status, could proceed without prepayment of costs. Subsequently, in February 1982, defendants moved for summary judgment. In the affidavits filed with their motion, defendants claimed no wrongdoing and declared that another officer had arrested the plaintiff, that Adams had positively identified the plaintiff from a lineup, and that Adams had submitted a credible statement of the events which led to the charges being filed against Edwards.
 
 
 8
 On April 24, 1984, Edwards filed a motion for the appointment of counsel. At the time this motion was filed, Edwards was serving a prison sentence at Fort Pillow Prison and Farm in Henning, Tennessee. On June 13, 1984, Judge Julia Smith Gibbons denied defendants' motion for summary judgment because it did not specifically address either the decision to charge Edwards or defendants' conduct at the lineup or preliminary hearing at which Edwards was identified. Also, on this same date, the court denied Edwards' motion for appointment of counsel.
 
 
 9
 After deposing Edwards, defendants filed another motion for summary judgment. In the motion and accompanying papers, defendants stated that they did not coerce Adams to testify, and reiterated their contention that Adams had honestly believed all along that Edwards was her attacker. To further support this position, defendants provided the court with the affidavit of Myra Adams in which she declared that Simpson and Logan had not coerced her to testify against Edwards. In addition, defendants stated that they did not apply pressure on the District Attorney's office to press charges against Edwards. They provided the court with the affidavit of an assistant district attorney who confirmed that the district attorney's office has the sole discretion to obtain indictments and to prosecute cases. Defendants also stated that they were not present at the lineup at which Edwards was initially identified. Finally, addressing Edwards' claim regarding statements made by Simpson to Edwards' father, Simpson denied stating to the father that Edwards was innocent of raping Adams. Simpson did acknowledge, however, that he had said to the elder Edwards that his son could not have committed all the rapes in the neighborhood.
 
 
 10
 This time, finding no issue of material fact, the district court granted defendants' motion for summary judgment. The court did think there was an issue as to what exactly was said by defendant Simpson to plaintiff's father, but it found the issue to be immaterial as to the existence of the conspiracy claimed by Edwards. This appeal followed.
 
 II.
 
 11
 The first issue that needs to be addressed is plaintiff's claim that the district court should have granted his request for the appointment of counsel.[2]
 
 
 12
 The authority for a district court to appoint counsel for indigents in civil cases comes from 28 U.S.C. Sec. 1915(d):
 
 
 13
 The court may request an attorney to represent such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.
 
 
 14
 There is no constitutional right to appointed counsel in a civil case and, as a general rule, counsel will only be appointed under section 1915(d) in exceptional circumstances. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986). The decision to appoint counsel involves a fact-specific inquiry turning upon the merits of the indigent's claims, the nature and complexity of the case, and the indigent's ability to present the case. See McCarthy v. Weinberg, 753 F.2d 836, 838-39 (10th Cir.1985) (per curiam); Merritt v. Faulkner, 697 F.2d 761, 764 (7th Cir.), cert. denied, 464 U.S. 986 (1983).
 
 
 15
 Because the inquiry is so fact specific, broad discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision. Accordingly, appellate courts must exercise considerable restraint in reviewing a district court's determination in this regard. Hodge v. Police Officers, 802 F.2d 58, 60 (2d Cir.1986); Henry v. City of Detroit Manpower Dept., 763 F.2d 757, 760 (6th Cir.) (en banc), cert. denied, 106 S.Ct. 604 (1985). Indeed, only when the denial of counsel results in "fundamental unfairness impinging on due process rights" will a denial of counsel be overturned. Caruth v. Pinkney, 683 F.2d 1044, 1048 (7th Cir.1982), cert. denied, 459 U.S. 1214 (1983).
 
 
 16
 The starting point for the analysis is the merits of the claim asserted. A court need not appoint counsel when it considers the litigant's chance of success to be extremely slim. Id. In his complaint in this case Edwards made conclusory allegations of a conspiracy by police officers to charge him with a crime the officers knew he did not commit and to coerce a key witness to testify against him. After defendants responded to these allegations with credible counter-statements of the facts, Edwards failed to reply or in any way suggest that his claim had any factual basis. Thus, at the time Edwards requested counsel in April 1984, over two years after he had filed his complaint, he had not demonstrated a likelihood of success on the merits.
 
 
 17
 Edwards makes much of the fact that the court found his complaint to state a valid federal claim against defendants. This is not, however, the test for determining whether counsel should be appointed. If every case filed by an indigent which stated a claim sufficient to survive a motion to dismiss or to avert summary judgment, required the appointment of an attorney under section 1915(d), the demand for such representation would be overwhelming. Here, Edwards can not simply rest on the allegations made in his complaint, but must make some showing that he is likely to succeed on the merits of his case.
 
 
 18
 Edwards also claims that his inability both to counter the motions of the defendant and to gather evidence while incarcerated constitute exceptional circumstances requiring the appointment of counsel. These arguments are not persuasive. Defendants' summary judgment motions did not raise any complicated legal arguments, but simply responded to Edward's allegations with credible counter-statements of the relevant facts. Edwards, who filed a fairly detailed complaint, would have had no problem responding to these motions. Further, Edwards' inability to question Myra Adams is not a factor that requires the appointment of counsel. Edwards has not made any kind of credible showing that Adams is likely to retract from the position she has maintained all along with respect to the identity of her attacker. Indeed, his only basis for believing that Adams had been coerced is her testimony at trial in which, according to Edwards, she said that "she didn't see her attacker." However, a brief review of the relevant testimony, which is part of the record on this appeal, demonstrates quite clearly that while Adams had waivered a bit on cross-examination as to her ability to observe her attacker in the dark, she nevertheless continued to maintain that she had a good enough look at Edwards to positively identify him.
 
 
 19
 Finally, plaintiff argues that the district court's decision should be reversed because the court made only cursory findings as to the complexity of the case and plaintiff's ability to represent himself. Admittedly, it would have been helpful to this court if Judge Gibbons had made specific findings as to why counsel was denied. Nevertheless, the record before this court is sufficiently clear for us to conclude that Judge Gibbons did not abuse her discretion in denying Edwards' request for counsel. See Jackson v. Dallas Police Dept., 811 F.2d 260, 262 (5th Cir.1986).
 
 
 20
 For the foregoing reasons, the district court's decision denying Edwards' request for the appointment of counsel is affirmed.
 
 III.
 
 21
 We next address whether the district court erred in granting summary judgment for the defendants. This court may only sustain a grant of summary judgment if the material before the district court "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." SEC v. Blavin, 760 F.2d 706, 710 (6th Cir.1985). All evidence must be viewed in the light most favorable to the non-moving party with his papers indulgently treated, while the opponent's are closely scrutinized. Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir.), cert. denied, 105 S.Ct. 545 (1984).
 
 
 22
 Applying these well-settled principles to the case at hand, we conclude that summary judgment was proper. The defendants categorically refuted with sworn statements the charges asserted by Edwards. Accordingly, Edwards was required to submit like evidence showing that a genuine issue of material fact still existed. As discussed above, this burden did not require Edwards to make sophisticated legal arguments, which admittedly he would be incapable of making, but merely required him to come forth with a response to defendants' counter-statements that would indicate to the district court that material factual disputes still existed with respect to plaintiff's allegations of conspiracy and coercion. Edwards failed to do this. While it is true that the district court found that a factual dispute still might exist with respect to what Simpson told Edwards' father, the court correctly concluded that this was not a dispute as to a material fact. Even assuming that Simpson had told the senior Edwards that his son did not commit the Adams rape--and both Simpson's affidavit and the father's testimony at trial suggest that this is not what was said--this is not sufficient to raise a genuine issue of material fact as to the existence of the alleged conspiracy. At most, Edwards' version of the conversation allows only for the inference that Simpson learned in the course of his investigation that Edwards was probably not responsible for the Adams rape. It does not also require the conclusion that Simpson, much less Logan, conspired to charge Edwards with the crime. Nor does iteven remotely suggest that Simpson and Logan coerced Adams into testifying against Edwards.
 
 
 23
 Accordingly, since no genuine issue of material fact exists with respect to the allegations of conspiracy and coercion, summary judgment was properly granted and the district court's decision is AFFIRMED.
 
 
 
 [1]
 Plaintiff also sued the state of Tennessee and the victim of the alleged rape, Myra Ann Adams. The case was eventually dismissed as to these two defendants and this appeal does not challenge those dismissals
 
 
 [2]
 Because this circuit has ruled that orders denying the appointment of counsel are not immediately appealable, Henry v. City of Detroit Manpower Dept., 763 F.2d 757 (6th Cir.) (en banc), cert. denied, 106 S.Ct. 604 (1985), plaintiff was required to wait until after final judgment to challenge the district court's decision on this issue