Moses I. LEWIS, Jr., Plaintiff-Appellant

v.

Morris THIGPEN, Commissioner, Department of Corrections, Et Al., Defendants-Appellees.

No. 84–4271.

United States Court of Appeals, Fifth Circuit.

Aug. 8, 1985.

Perry Sansing, Jackson, Miss. (Court-appointed), for plaintiff-appellant.

Edwin Lloyd Pittman, Atty. Gen., Robert L. Gibbs, Jackson, Miss., for defendants-appellees.

Before JOHNSON, JOLLY, and HILL, Circuit Judges.

JOHNSON, Circuit Judge:

Moses I. Lewis filed this 42 U.S.C. § 1983 action against Charles Floyd, former director of the Leflore County Restitution Center (Restitution Center), an institution under the Mississippi Department of Corrections. Lewis alleged that defendant Floyd violated his due process rights in Lewis' transfer from the Restitution Center to the Mississippi State Penitentiary at Parchman.[1] After a bench trial, the magis-

---

1. Lewis also sued Morris Thigpen, Commissioner of the Mississippi Department of Corrections, and Eddie Lucas, Warden of the Mississippi State Penitentiary at Parchman. Both of these

trate recommended that judgment be entered for the defendant. The district court followed this recommendation, and Lewis appeals. The central issue on appeal is whether the trial court erred in refusing to grant Lewis a jury trial. We vacate the judgment of the district court and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Following his plea of guilty on three counts of credit card forgery on February 19, 1981, Lewis was "sentenced to serve a term of fourteen (14) years in an institution under the supervision and control of the Department of Corrections." The sentence also prescribed,

> Provided however, it having been made known to the Court that the defendant has not been heretofore convicted of a felony, and that the ends of justice ... will be best served, the Court hereby suspends the execution of the above sentence for a period of nine (9) years, the suspension of this sentence to commence after the defendant has served five (5) years in an institution under the supervision and control of the Department of Corrections.

Record Vol. I at 200. The sentence then set out a number of conditions for the suspended portion of the sentence. These conditions included that Lewis "pay all court costs; pay a supervisory fee of $10.00 per month to the Department of Corrections, and report to his Probation Officer immediately upon his release from custody." The sentence also set Lewis' restitution as a condition of the suspended portion of his sentence:

> It is further ordered that this Defendant shall make full restitution to the victim of the crime for which he is sentenced herein. ...

Provided further that said Defendant shall successfully complete the program at the Leflore County Restitution Center, a unit of the Department of Corrections, to which he is hereby committed, and to be certified by said Center as to such completion on or before the expiration of the unsuspended portion of this sentence.

Record Vol. I at 201. In accordance with this sentence, Lewis was assigned to the Leflore County Restitution Center. Record Vol. IV at 29. Judge Elzy Smith's sentencing order stated that Lewis' "Probation Supervisor" affirmed that "[a] certified copy of this order has been delivered to Probationer, who has been instructed regarding same." Record Vol. I at 201. Lewis signed the statement as a "Probationer," stating, "I accept the above probation in accordance with the terms thereof." *Id.*

Lewis began his tenure at the Restitution Center. The purpose of the Restitution Center is to provide offenders with an alternative to confinement at the main penitentiary facility at Parchman while ensuring restitution to victims of property crimes.[2] The program at the Restitution Center provides assistance in obtaining employment, and each participant accordingly is required to maintain employment, as well as to work at the Restitution Center itself and in community service projects. Participants are to make a good faith effort toward restitution and are required to report their earnings. Participants in the program enjoy considerably more freedom than they would at Parchman. While in the program, participants earn "points" by maintaining good behavior and following the Restitution Center's rules and regulations. Once a participant has earned a sufficient number of points, the participant may be granted a pass to leave the Restitution Center's premises for a period up to

---

defendants were dismissed at the pretrial stage and are not parties to this appeal.

**2.** Miss.Code Ann. §§ 99–37–1 through 99–37–19 provide for restitution to victims of crimes. Section 99–37–5(2) provides that a court may make payment of restitution a condition of pro-

bation. Sections 99–20–1 through 99–20–19, which were enacted after Lewis was sentenced, provide for a program of community service restitution. Sections 47–5–401 through 47–5–421 govern a work release system in the Mississippi system of corrections.

forty-eight hours. Upon earning a sufficient number of points, at least some participants in the program are eligible for release.

Lewis remained at the Restitution Center for three and one-half months. During that period, he worked successively for two employers outside of the Restitution Center. In June 1981, defendant Floyd, who was then director of the Restitution Center, met informally with Judge Elzy Smith, the state judge who had originally sentenced Lewis. During this conversation, director Floyd told Judge Smith that Lewis had not worked the hours that he should have, that Lewis would sleep at work, that he had failed to record all his employment earnings with the Restitution Center, that he had failed to make progress in a waterbed project that he had started with the second employer, and that Lewis had not made a good faith effort toward restitution. Floyd also related to Judge Smith that federal agents were conducting an investigation of Lewis. On June 9, shortly after his conversation with director Floyd, Judge Smith summarily ordered Lewis transferred from the Restitution Center to the Parchman facility. This order was executed, and Lewis was transferred to Parchman.

Lewis filed a habeas corpus action in Mississippi state court to challenge his transfer from the Restitution Center to Parchman. The Circuit Court of Coahoma County denied the writ, and Lewis appealed to the Mississippi Supreme Court. That court reversed the circuit court's denial of the writ. The court stated that Lewis had been sentenced to "an institution under the supervision and control of the Department of Corrections." *Lewis v. State*, 414 So.2d 435, 436 (Miss.1982). The court turned to section 47–5–110 (1981) of the Mississippi Code, which provides, "Commitment to any institution or facility within the jurisdiction of the department, shall be to the department, not to a particular institution or facility.... [The Commissioner] may transfer

an offender from one institution to another..." Further, the court noted that the Department of Corrections has "sole jurisdiction over and responsibility for offenders in [the] restitution program." Miss. Code Ann. § 99–37–19 (Supp.1984). Relying on these two statutes, the Mississippi Supreme Court concluded:

> In our opinion, appellant could only be transferred from one institution within the Department of Corrections to another institution within that same department by order of the Commissioner of Corrections pursuant to section 47–5–110. Since the circuit court lacked authority to transfer appellant to the Mississippi State Penitentiary at Parchman, and the Commissioner of Corrections did not so transfer, appellant must be returned to the Leflore County Restitution Center and there dealt with by the Commissioner of Corrections to either leave him at the restitution center or assign him wherever the commissioner chooses pursuant to section 47–5–110.
>
> Moreover, the jurisdiction in this case, insofar as the circuit court was concerned, was completely terminated with the limited power remaining in the court to determine at a later date whether or not any or all of the suspended sentence should be revoked. That was the sole authority remaining in the circuit court. Any such revocation could only have been entered following a due process hearing thereon.

*Lewis,* 414 So.2d at 437.

The court directed that Lewis' petition for habeas corpus be granted and that Lewis should be "returned to the Leflore County Restitution Center subject to being transferred therefrom by the Commissioner of Corrections." *Id.* The court reserved the question of whether Lewis was entitled to a due process hearing prior to his transfer from the Restitution Center. *Id.*[3]

---

**3.** The state circuit court had denied Lewis' petition on the ground he was not entitled to a hearing prior to his transfer; the Mississippi

Supreme Court stated, "The remaining assignments of error ... are specifically not decided herein." 414 So.2d at 437.

On September 22, 1981, Lewis, proceeding pro se, filed the instant section 1983 action. Lewis seeks only damages in the present federal action.

Lewis alleged that director Floyd made misstatements to Judge Smith "with malicious intent ... causing plaintiff to be resentenced to custody of the Mississippi Department of Corrections at Parchment [sic], Mississippi." Record Vol. I at 7–8. In his complaint, Lewis did not demand a jury. His motion for appointment of counsel was denied.

On September 15, 1982, following several months of discovery, the magistrate issued notice to the parties that the case would be tried to the bench on February 15, 1983. On October 6, 1982 (i.e., four months before the scheduled trial date), Lewis for the first time moved for a jury trial, asserting that he was entitled to a jury trial under the Seventh Amendment of the United States Constitution. On October 13, the magistrate denied Lewis' motion, holding that Lewis' demand for a jury was untimely under Fed.R.Civ.P. 38(b)[4] and that he had provided no basis upon which the magistrate could exercise his discretion under Rule 39(b).[5] Record Vol. I at 113–14.

On October 25, Lewis filed an "Objection to Magistrate's Order" to the denial of his request for jury trial. Lewis stated that he was a "pro se litigant and should not be required to exhibit the pleading awareness of a trained lawyer." He also termed the Federal Rules of Civil Procedure "a system of complex guidelines not having been designed by nor for pro se litigants to follow but for trained counsel." Record Vol. I at 115. Neither the magistrate nor the district judge responded to Lewis' supplication. Approximately four months after the designation, that is, on February 15, 1983, the case proceeded to trial before the court.

At trial, Lewis introduced evidence pertaining to his work for the private employers. This evidence indicated that he had not been away from work without permission, that he had made a good faith effort to pay restitution, that he had reported his payments to the Restitution Center, and that he had maintained good behavior while at the Restitution Center. From this evidence and other testimony that director Floyd had treated Lewis more harshly than other program participants, Lewis argued that director Floyd had maliciously misstated Lewis' status at the Restitution Center and had caused Lewis to lose his placement at the Restitution Center and to be transferred to Parchman. The magistrate, however, credited director Floyd's testimony that he had acted in good faith in relying on reports he received from his subordinates and Lewis' employers and in reporting to Judge Smith.[6] Thus, the magistrate recommended that judgment be entered against plaintiff Lewis. In his objections to the magistrate's recommendation, Lewis again noted that the trial was "had without a jury and against plaintiff's previously expressed wishes, by motion, for a jury." Record Vol. II at 281. The district court adopted the magistrate's report and dismissed the case with prejudice. Lewis' motion for new trial, in which he again argued

---

4. Fed.R.Civ.P. 38(b), (d) provide:
 (b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.
 (d) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

5. Fed.R.Civ.P. 39(b) provides:
 (b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

6. We, of course, express no comment on the weight of the evidence in the event that this action should be retried.

that he was entitled to a jury trial under the court's discretion because of his *pro se* status, was denied. Lewis timely appealed. Lewis, who had been in prison at least through the time of the trial before the magistrate, was appointed counsel for the first time by this Court for his appeal.

## II. THE MERITS

### A. *Jury Trial*

 It is readily apparent that Lewis waived his right to a jury trial when he failed to demand a jury within the ten-day limit following the last pleading. Fed.R. Civ.P. 38(b), (d). However, a party may be relieved of such a waiver upon motion and in the discretion of the trial court. Fed.R. Civ.P. 39(b). In this appeal, Lewis argues that the trial court abused its discretion in denying him such relief.

 This Court has maintained the view that a trial court, in exercising its Rule 39 discretion, "should grant a jury trial in the absence of strong and compelling reasons to the contrary." *Swofford v. B & W, Inc.,* 336 F.2d 406, 409 (5th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). *See also Pinemont Bank v. Belk,* 722 F.2d 232, 236 (5th Cir.1984). Indeed, this Court has stated, "A motion for trial by jury submitted under Rule 39(b) should be favorably received unless there are persuasive reasons to deny it." *United States v. Unum, Inc.,* 658 F.2d 300, 303 (5th Cir.1981). The Court's statements indicating a favorable reception at the trial level to Rule 39(b) motions is tempered by the observation that such a motion is considered strongly against the moving party "when no justification is offered in explanation of a lengthy delay." *United States v. Lochamy,* 724 F.2d 494, 499 (5th Cir. 1984). Similarly, "[i]t is not an abuse of discretion by a [trial court] to deny a Rule 39(b) motion ... when the failure to make a timely demand for a jury trial results from mere inadvertence on the part of the moving party." *Bush v. Allstate Insurance Co.,* 425 F.2d 393, 396 (5th Cir.), *cert.*

*denied,* 400 U.S. 833, 91 S.Ct. 64, 27 L.Ed.2d 64 (1970). The Court has summarized, "The [trial] court ought to approach each application under Rule 39(b) with an open mind and an eye to the factual situation in that particular case, rather than with a fixed policy against granting the application or even a preconceived notion that applications of this kind are usually to be denied." *Pinemont Bank,* 722 F.2d at 237 (quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 2334 at 115–16 (1971) (footnotes omitted)).

In the instant case, Lewis argues that there were no "strong and compelling reasons" to deny his Rule 39(b) motion. *See Swofford,* 336 F.2d at 409. Lewis points out that his jury demand, although untimely under Rule 38, was made four months before trial and that granting the motion so far in advance of trial would have resulted in neither prejudice to the opposing party nor inconvenience to the trial court. Defendant Floyd counters that, although there may have been little prejudice to Floyd in granting Lewis' Rule 39(b) motion, Lewis failed to state any justification for his lengthy delay and that the trial court therefore correctly considered the Rule 39(b) motion strongly against plaintiff Lewis. *See Lochamy,* 724 F.2d at 499. In denying the motion, the magistrate stated that Lewis had failed to provide the court "with some basis upon which to exercise that [Rule 39(b)] discretion." Record Vol. I at 113.

In response to the magistrate's holding (and the defendant's argument) that he failed to state any justification for granting him Rule 39(b) relief, Lewis asserts that he alleged his ignorance as a *pro se* prisoner. Lewis' assertion raises two questions: (1) whether Lewis' justification of ignorance was apparent from his motions, and (2) whether a *pro se* party's ignorance of Rule 38, if found credible, should lead a trial court to grant a Rule 39(b) motion in the absence of strong and compelling reasons to the contrary under *Swofford.*[7]

---

7. We note that the instant case deals only with 

the situation in which a party asserts that the

Regarding the first question, an examination of Lewis' motions reveals that Lewis' claim of ignorance was apparent at the time that Lewis filed his motion for jury trial and at the time of Lewis' objections to the magistrate's denial. Although Lewis did not explicitly claim ignorance of Rule 38,[8] he asserted that the reason for his failure to make a timely demand for a jury was "his unprofessional failure to adhere to procedural requirements in the otherwise [sic]." Record Vol. I at 116. Further, Lewis called his *pro se* status to the attention of the magistrate in terming the Federal Rules of Civil Procedure "a system of complex guidelines not ... designed ... for pro se litigants." *Id.* at 115. Further, Lewis' motion for counsel had previously been denied by the same magistrate who acted on Lewis' motion for jury trial. Given such circumstances and construing Lewis' allegations liberally, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Amin v. Universal Life Insurance Co. of Memphis*, 706 F.2d 638, 640 n. 1 (5th Cir.1983) (per curiam), Lewis' statements to the magistrate—though not explicit—adequately called his claim of ignorance to the attention of the trial court.[9]

The second question is whether Lewis' ignorance, if found credible by the trial court, should have led the trial court to exercise its discretion to grant his Rule 39(b) motion in the absence of strong and compelling reasons to the contrary. As previously noted, this Court has held that a trial court does not abuse its discretion in denying a Rule 39(b) motion when the failure to file a timely demand under Rule 38 results from "mere inadvertence" on the part of the moving party's counsel. *Bush*, 425 F.2d at 396. Neither the parties' briefs nor this Court's own research has revealed a case in which this Court has addressed a *pro se* party's ignorance of the rules as justification for Rule 39(b) relief. However, the Seventh Circuit, in applying the same *Swofford* standard which originated in this Court, has distinguished cases in which counsel has been inadvertent in filing an untimely jury demand and those in which a *pro se* litigant fails to file a timely demand out of ignorance or incompetence. *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983).[10] In *Merritt,* the court noted:

district court abused its discretion in *denying* a Rule 39(b) motion. The instant case does not deal with the situation in which a party argues abuse of discretion by the trial court in *granting* a Rule 39(b) motion.

8. Of course, a party would have difficulty in *explicitly* claiming his own ignorance in that "ignorance" is the state of being "unaware [and] uninformed" or "destitute of knowledge." *Webster's Third New International Dictionary* 1125 (1976). *See also Black's Law Dictionary* 672 (5th Ed.1979) (ignorance is the "want or absence of knowledge, unaware or uninformed").

9. The disposition of the instant case intends no criticism of the magistrate's efforts to ensure Lewis a fair trial of his claim. Indeed, this Court's examination of the record of the trial reveals extensive efforts by the magistrate to explain trial court procedure to Lewis and to ascertain whether Lewis understood such procedure.

10. Although other circuits have upheld decisions by district courts in denying *pro se* parties a jury after an untimely demand, we find these cases unpersuasive under the facts of the instant case. In *Washington v. New York City Board of*

*Estimate,* 709 F.2d 792 (2d Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983), the Second Circuit upheld a trial court's denial of a jury demand made five days before trial. Even so, one judge dissented, arguing that "the paradigm case for permitting untimely filing is that of a pro se plaintiff, at least one who is not himself a lawyer or should not otherwise be presumed to have familiarity with the Federal Rules of Civil Procedure." *Id.* at 799 (Oakes, J., dissenting). Similarly, the Fourth Circuit in *McCray v. Burrell,* 516 F.2d 357, 371 (4th Cir. 1975) (en banc), *cert. dismissed,* 426 U.S. 471, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976), affirmed a trial court's denial of jury trial made fifteen months after counsel was appointed. Finally, in *Scharnhorst v. Independent School District #710,* 686 F.2d 637, 641 (8th Cir.1982), *cert. denied,* 462 U.S. 1109, 103 S.Ct. 2459, 77 L.Ed.2d 1337 (1983), the Eighth Circuit strictly applied the waiver provisions of Rule 38 to the *pro se,* nonprisoner litigant. The court did not discuss the district court's discretion under Rule 39.

Moreover, these other courts require a litigant seeking to overturn a district court's denial of a request for a jury trial to meet a higher standard than the test employed in this Court. *See Washington,* 709 F.2d at 799 (Oakes, J., dissenting)

The defendants rely upon cases which hold that mere inadvertence of counsel is not enough to support a rule 39(b) motion. But this is not a case of mere inadvertence of counsel. This motion was made by a blind *pro se* litigant who indicated from his first pleadings, through his requests for counsel, that he did not feel competent to represent himself in court.

697 F.2d at 767 (citations omitted). In concurring in the opinion, Judge Posner noted, "A prisoner not represented by counsel, even one assisted as here by 'lay advocates' (also known as 'jailhouse lawyers'), is entitled to every indulgence in the [trial] court's procedural rulings.... It is unfair to deny a litigant a lawyer and then trip him up on technicalities." 697 F.2d at 769.

█ We find the Seventh Circuit's analysis particularly helpful in that it employs the *Swofford* standard that has been adopted by this Court. Further, the defendant in the instant case concedes that Lewis' claim of ignorance, if explicitly stated to the trial court, would have shifted "the burden of proof to ... [the defendant] Floyd to state strong and compelling reasons why the motion [for jury trial] should be denied." Floyd Supplemental Brief at 11. It should also be remembered that this Court's holding in *Swofford*—that the Rule 39(b) motion should be granted in the absence of strong and compelling reasons to the contrary—is based on the long accepted observation that the right to trial by jury "is a basic and fundamental feature of our system." *Swofford*, 336 F.2d at 409. The Seventh Circuit's holding in *Merritt* is consistent with this Court's favorable treatment of Rule 39(b) motions. It is also consistent with the observation that "pro se litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir.1980) (per curiam). *See also Barker v. Norman*, 651 F.2d 1107, 1129 n. 26 (5th Cir.1981).

█ Thus, if a petitioner's assertion of ignorance is credible, the trial court should exercise its discretion under Rule 39(b) to grant him a trial by jury "in the absence of strong and compelling reasons to the contrary." *Swofford*, 336 F.2d at 409. It is emphasized that a *pro se* litigant's claim of ignorance must be found credible by the trial court. A *pro se* litigant's experience with trial court procedure, his apparent familiarity with the Federal Rules of Civil Procedure, or his choice to represent himself may lead the trial court to determine that a claim of ignorance should not be credited.[11] *See Molinaro v. Watkins-Johnson CEI Division*, 60 F.R.D. 410, 414 (D.Md.1973) (court declined to exercise Rule 39(b) discretion where *pro se* parties showed knowledge of rules of procedure). *Cf. Pellegrino v. Marathon Bank*, 640 F.2d 696, 698 (5th Cir.1981) (per curiam) (although party's *pro se* status at time of failure to file timely appeal was "sole factor weighing in [party's] favor," party's familiarity with rules prevented him from invoking *pro se* status as "shield insulating him from the result of his own neglect").

█ In the instant case the trial court may well find, on remand, that Lewis'

(citing *Noonan v. Cunard Steamship Co.*, 375 F.2d 69, 70 (2d Cir.1967)); (district court's discretion under Rule 39 exercisable only where there are special circumstances excusing the untimely demand); *McCray*, 516 F.2d at 371 (4th Cir.) (no "exceptional circumstances [such] that the failure to grant the oral motion was an abuse of discretion"); *First Wisconsin National Bank of Rice Lake v. Klapmeier*, 526 F.2d 77, 80 (8th Cir.1975) (party bears a "heavy burden" when seeking to overturn a district court's denial of an untimely jury demand). *Compare Swofford*, 336 F.2d at 409 (district court should grant jury trial "in the absence of strong and compelling reasons to the contrary"); *Merritt*,

697 F.2d at 767 (7th Cir.) (same). *See generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2334 at 113–14 (1971).

**11.** The list of factors here suggested to determine the credibility of a party's assertion should not be considered exhaustive. A trial court, for instance, might consider a movant's assertion of ignorance or the difficulty in obtaining adequate legal materials. We also note that, in the instant case, plaintiff Lewis did not choose to represent himself since his previous motion for counsel had been denied.

claim of ignorance is not credible. If it does so, however, the trial court must articulate its reasons for doing so. It is noted with particularity that the court in the instant case did not articulate any "strong and compelling reasons" why the motion for jury trial should be denied since it held that Lewis had stated no justification upon which the trial court could base its discretion. If such reasons exist,[12] these should also be stated by the trial court on remand.

## B. *Harmless Error*

This Court has held that even if a party is erroneously denied a jury trial, the error is harmless if the evidence could not have withstood a motion for directed verdict at trial. *Cox v. C.H. Masland & Sons, Inc.,* 607 F.2d 138, 144 (5th Cir.1979). In *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc), this Court held that granting a motion for directed verdict is proper "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict."

In the instant case, the magistrate either assumed or did not reach the question of whether Lewis had a sufficient liberty interest, sufficient to invoke the due process clause, in participating in the Restitution Center program. This was due to some confusion as to Lewis' status in the Restitution Center program. The magistrate noted that Judge Elzy Smith, the state judge who had sentenced Lewis, employed a different procedure than other state judges. The magistrate stated:

There is further evidence, undisputed, that Judge Smith's procedure in sentencing defendants who would be assigned to the Restitution Center was somewhat different from that employed by the other judges with whom Floyd worked. Unlike the other judges, Judge Smith's practice was to sentence prisoners to the custody of the Department of Corrections. The witnesses and, indeed, counsel who argued the case, are somewhat uncertain what, if any, difference that made in how a resident at the Restitution Center was to be handled.

Record Vol. III at 12.

This confusion as to Lewis' status was not resolved by the preargument submissions of the parties to this Court. Concerned about this ambiguity, this Court directed the parties to submit further briefing to the Court on the question of whether Lewis possessed a sufficient liberty interest in his participation in the Restitution Center program. The parties responded.

Counsel for defendant Floyd contends for the first time in his post-argument submission that Lewis had no liberty interest in participating in the Restitution Center program. Defendant Floyd argues first that Lewis was not on probation when he was committed to the Restitution Center program. Rather, defendant Floyd argues, Lewis was sentenced to a total of fourteen years with nine years suspended but only after Lewis had served a five year term "in an institution under the supervision and control of the [Mississippi] Department of Corrections." Record Vol. I at 200. Thus, "Lewis was obligated to serve a sentence of five (5) years before he could be released on probation." Floyd Post-Argument Brief at 2. Once this definite term was imposed, director Floyd continues, the state judge was powerless to place Lewis on probation during the five year definite term since "the jurisdiction in [Lewis'] case, insofar as the circuit court was concerned, was completely terminated," as to the unsuspended portion of the sentence. *Lewis,* 414 So.2d at 437. Further, defendant Floyd argues, once Lewis was sentenced to "the supervision and control" of the Mississippi Department of Corrections, Lewis could have been released before completion of the five year term only through parole or earned time credits. *See* Miss.Code Ann. §§ 47–7–3 (parole), 47–5–139 (earned time credits) (1984 Supp.). Neither of these is related to participation in the Restitution Center pro-

12. Such reasons might include the disruption of the Court's own docket and prejudice to the opposing party. *See Pinemont Bank,* 722 F.2d at 238; *Unum,* 658 F.2d at 303.

gram, and because Lewis was not on probation while at the Restitution Center, defendant Floyd concludes that Lewis was not eligible to be released by earning a sufficient number of points, as prescribed in the Resident's Handbook. *See* Record Vol. I at 83. Finally, defendant Floyd contends that Lewis had no liberty interest in remaining at the Restitution Center, even though Lewis enjoyed considerably more freedom than at Parchman, since the Mississippi statutes grant the Commissioner of Corrections considerable discretion in transferring prisoners from one facility to another. *See* Miss.Code Ann. § 47–5–110 (1981).

Lewis responds that, under Judge Smith's practice in sentencing, he was under "some form of probation when he was assigned to the [Restitution] Center" and that Lewis would have been released if he had been allowed to continue to participate successfully in the program. Further, Lewis argues that even if he was not on probation and could not have been released on completion of the Restitution Center program, he nevertheless retained a state-created liberty interest in remaining at the Restitution Center over being transferred to Parchman. Lewis Post-Argument Brief at 15.

Apart from whether Lewis was on "some form of probation" under the sentence imposed by Judge Smith and whether Lewis was entitled to release from the Restitution Center program,[13] it is apparent that a significant factual dispute remains as to whether Lewis had a liberty interest in remaining at the Restitution Center and not being transferred to Parchman. While it is true that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him ..., the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight," *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976) (holding that prisoner had no due process claim for transfer from one state prison to another), a liberty interest in continued participation in the program may nevertheless be created by state statute, regulation, or practice. *Parker v. Cook*, 642 F.2d 865, 868 (5th Cir.1981). *Accord, Whitehorn v. Harrelson*, 758 F.2d 1416, 1422 (11th Cir.1985) (Wisdom, J., sitting by designation). The Supreme Court has recently stated:

> These cases demonstrate that a State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show "that particularized standards or criteria guide the State's decisionmakers." *Connecti-*

---

**13.** The evidence presented at trial strongly indicated that Lewis would have been eligible for release upon completion of the Restitution Center program if director Floyd's report to Judge Smith had not intervened. At trial, director Floyd testified:

> I asked you to make me a good faith effort, to make systematic payments toward the restitution, and then at that point in time after some six or eight months or whatever time I said at that time that I would go to Judge Smith and tell him you are making systematic payments, you are in good faith attempting to repay the victims of these crimes, and then at that point in time, of course, it is left up to the sentencing judge whether or not you are released from the Restitution Center.

Record Vol. IV at 75. Further, Lewis had earned a considerable number of points while at the Restitution Center, and Restitution Center officials testified that the purpose of the point accumulation program was to set minimum standards for release from the program. Record Vol. IV at 104–05. Director Floyd testified, in response to a question from the court, that Judge Smith's procedure in sentencing persons to the custody of the Department of Corrections "really had no effect in how we handled the people. At the time when we thought the residents successfully completed the program, we would ask the judge to give us a release order." Record Vol. V at 310. Finally, counsel for plaintiff Lewis points out that Lewis had to complete the Restitution Center program "on or before the expiration of the unsuspended portion of this sentence." Record Vol. I at 201. Since the Restitution Center's program took only 4½ to 9 months to complete, Lewis argues that the plain intent—even if not the literal meaning—of Judge Smith's sentence was that Lewis had five years (the unsuspended portion of his sentence) to complete the Restitution Center's program and that, upon such completion, he was to be placed on probation for the remainder of his sentence.

cut *Board of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (BRENNAN, J., concurring). If the decisionmaker is not "required to base its decisions on objective and defined criteria," but instead "can deny the requested relief for any constitutionally permissible reason or for no reason at all," *ibid.,* the State has not created a constitutionally protected liberty interest. See *id.,* at 466–67, 101 S.Ct. at 2465 (opinion of the Court).

*Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). *See also Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

■ In the instant case, defendant Floyd argues that Lewis had no protectible interest in remaining at the Restitution Center since the Mississippi statute vests considerable discretion in the Commissioner of Corrections to transfer prisoners from one facility to another. Miss.Code Ann. § 47–5–110 (1981). While this may be true, *see Tubwell v. Griffith,* 742 F.2d 250, 253 (5th Cir.1984), defendant Floyd's argument overlooks state regulation and administrative practice. The Restitution Center's regulations, contained in the Resident's Handbook, state that "the privilege [of remaining at the Restitution Center] is extended by the Court, as an alternative to incarceration in the Miss. State Penitentiary, and *if warranted,* the Court has the authority to retract this privilege." Record Vol. I at 82–83 (emphasis added). Moreover, the regulations state that the resident may be transferred for all "major" violations of rules and regulations or "flagrant" non-adherence to treatment plans. The handbook sets forth a litany of transgressions and provides a specific range of punishment for each violation. These punishments range from a revocation of a specific number of points to transfer from the program, depending upon the seriousness of the infraction. The Resident's Handbook states, "All residents have the right to appear before the staff to appeal any of these disciplinary measures." Record Vol. I at 97.

Given these regulations, it cannot be said, at this procedural juncture, that Lewis could have been transferred "for whatever reason or for no reason at all." *Meachum,* 427 U.S. at 228, 96 S.Ct. at 2540. *See also Whitehorn,* 758 F.2d at 1422 (remanding to district court for factual development of whether state created liberty interest in work release program containing similar regulations). Rather, Lewis may well have had a justifiable expectation that he would not be transferred absent misbehavior or other specified events. *See Vitek v. Jones,* 445 U.S. 480, 489, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980). This inquiry is properly undertaken at the trial court in the first instance. *Id.* at 1424. As this Court stated in *Parker v. Cook:*

> Even though statutes and regulations are written, an appellate court would have difficulty reviewing a district court determination of whether a liberty interest was created in the absence of a full factual development concerning the practices of the state, for the interaction between written regulations and actual practices often produces results not apparent by mere examination of the regulations. Moreover, the practices of a state may be determinative, for even if a state by statute or regulation explicitly refuses to grant inmates certain liberty interests, practices of a state may nevertheless give rise to those same liberty interests.

642 F.2d at 876. *Accord, Whitehorn,* 758 F.2d at 1424–25.

Examining the evidence summarized above, as well as the regulations contained in the Resident's Handbook, it cannot be held at this time that Lewis' cause of action would not have withstood a motion for directed verdict. We emphasize that the instant disposition reaches only this question and does not decide the merits of the issue of Lewis' liberty interest in the event that retrial is necessary.

## III. CONCLUSION

Accordingly, on remand, the trial court should examine whether Lewis' claim of

ignorance regarding his failure to demand a jury is credible and, if so, whether there were strong and compelling reasons for denying his motion for jury trial at the time of his motion and his objections to the magistrate's denial. If the claim is not credible or if there were such reasons to deny the motion, the trial court should reenter its judgment in favor of defendant Floyd. On the other hand, if Floyd's claim of ignorance is credible and if there were no such reasons, the case should be retried to a jury.

The judgment of the district court is vacated, and the case is remanded to that court for consideration consistent with this opinion.

VACATED AND REMANDED.