# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 2, 2010

Lyle W. Cayce
Clerk

No. 09-10407

CRAIG MCALPINE,

Plaintiff–Appellant

v.

PORSCHE CARS NORTH AMERICA INC; TIMOTHY COONS; MOD WORKS INC; PORSCHE AVIATION PRODUCTS INC; GARY BUTCHER,

Defendants–Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:06-cv-00189-Y

Before JONES, Chief Judge, and BENAVIDES and PRADO, Circuit Judges.

PER CURIAM:[*]

Craig McAlpine appeals the district court's grant of summary judgment to Porsche Cars North America, Inc., Mod Works Inc., Porsche Aviation Products, Inc., Timothy Coons, and Gary Butcher (collectively "Defendants"). McAlpine alleged that Defendants committed torts against his purported property. After considering the parties' arguments, for the following reasons, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-10407

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Dr. David McAlpine, Craig McAlpine's father, purchased all outstanding shares of HCC Corporation. HCC's sole asset was a Mooney PFM airplane fitted with a Porsche engine. McAlpine's father allegedly transferred his HCC stock in 2003 to his son as a gift. At all relevant times, HCC was registered as the owner of the aircraft.

In the late 1990s, Porsche decided to withdraw from the aviation business and informed those who owned its engines that it would cease providing support after May 31, 2005. Porsche, through its employee Gary Butcher, contracted with Mod Works to develop a program to replace Porsche engines. Porsche agreed to offset the cost of replacement to owners and, as an alternative to replacement, Mod Works offered to purchase the airplanes outright.

In 2002, McAlpine's father contracted with Mod Works to replace the airplane's engine. In July 2004, McAlpine delivered the airplane to Mod Works' facility in Punta Gorda, Florida. Upon delivery, Mod Works told McAlpine that the replacement process would take much longer than he expected. According to McAlpine, when he said that he wanted to take the airplane and return it to Mod Works at a later date, Mod Works employees effectively grounded it by draining the oil from the engine, and Timothy Coons, Mod Works' president, threatened to report McAlpine to the FAA for flying a non-airworthy plane. Two weeks later, Hurricane Charley struck, damaging ModWorks' facilities and the plane. Approximately two years after Hurricane Charley, McAlpine attempted to retrieve the airplane from Mod Works. He found that the plane had been left on an outdoor ramp and that the engine, gear box, propellor, avionics, and other equipment had been removed, leaving it unfit to fly.

In 2006, McAlpine filed this action against Defendants in Texas state court, and Defendants removed it to federal court. In his amended complaint, McAlpine asserted various claims against Defendants; on appeal, however,

No. 09-10407

McAlpine abandons all claims except for conversion. As to conversion, McAlpine alleged that Defendants deprived him of his right of ownership or possession of the airplane when Mod Works and Porsche prevented him from removing it from the Mod Works facility. Although he initially had counsel, McAlpine ultimately pursued his claims *pro se.*

Following discovery, Defendants moved for summary judgment. The district court granted summary judgment in favor of Defendants on the ground that McAlpine lacked standing to maintain his action. The court also found that McAlpine had failed to present any competent evidence that he suffered damages as a result of Defendants' actions. McAlpine moved to amend or alter the district court's judgment, arguing that it did not properly consider all of the evidence relating to ownership and damages. The district court denied the motion.

McAlpine timely appealed. Once again represented by counsel, he raises four issues before this Court: (1) whether the district held him, as a *pro se* litigant, to an improper standard of compliance with formal or technical rules; (2) whether he presented sufficient evidence to create an issue of material fact as to whether he had standing to assert his conversion claim; (3) whether the district court erred in finding that he had presented no evidence of damages; and (4) whether the district court improperly denied his motion for a new trial.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the final decision of the district court under 28 U.S.C. § 1291. We review the district court's grant of summary judgment *de novo. Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "A genuine issue of material fact exists

3

when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

We review a district court's denial of a Rule 59(e) motion for an abuse of discretion. *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Rule 59(e) relief is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact. *Id.* at 567. A court should not grant Rule 59(e) relief on the basis of "arguments which could, and should, have been made before the judgment issued," *id.* (quotation omitted), and should not allow a case to be argued under a new legal theory. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

### III. ANALYSIS

### A. Pleading Standards for *Pro Se* Litigants

In his opposition to Defendants' motions for summary judgment, McAlpine attached a notarized document purporting to show that McAlpine's father had transferred all of HCC's stock to him. McAlpine stated that HCC had dissolved and therefore the airplane distributed to him as the sole shareholder. McAlpine did not establish HCC's dissolution by affidavit or any other competent evidence. In crafting its order, the district court accepted the purported stock transfer, but disregarded the claimed dissolution of HCC. Because the evidence showed that, at most, McAlpine was the sole shareholder of a close corporation, the district court held that McAlpine did not have standing to sue on HCC's behalf.

McAlpine contends that because he did not have counsel, the district court should have considered his statements concerning HCC's dissolution as proper summary judgment evidence. To defeat a motion for summary judgment, "an opposing party may not rely merely on allegations or denials in its own pleading;

No. 09-10407

rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). McAlpine argues that, because a party signing a brief certifies that "the factual allegations [made therein] have evidentiary support," *id*. 11(b)(3), a *pro se* party's brief, to the extent it sets out facts made on personal knowledge, should be considered an affidavit for purposes of summary judgment.

We have previously held that "[a]lthough *pro se* litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, we have never allowed such litigants to oppose summary judgments by the use of unsworn materials." *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (per curiam). Contrary to McAlpine's contention, a Rule 11 signature does not swear to the truth of facts in a submission to the court, but only to the belief that they have or will have, after investigation, evidentiary support. FED. R. CIV. P. 11(b)(3). An affidavit must set out facts, made on personal knowledge, "that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). Signing a pleading or brief is different from swearing to an affidavit.

McAlpine relies upon *Lewis v. Thigpen*, 767 F.2d 252 (5th Cir. 1985), to support his argument that the rules of procedure should be relaxed for a *pro se* litigant. In *Lewis*, a *pro se* prisoner failed to timely request a jury trial in a damages suit. *Id*. at 256. Our consideration of the litigant's failure to request a jury trial in a timely manner depended upon the discretionary function of the district court implicit in Rule 39(b), and we ultimately remanded for a determination of whether the *pro se* litigant was truly ignorant of his obligation to request a jury trial. *Id*. at 258–60. The discretion afforded to the district court in *Lewis* under Rule 39(b) is not present here. Under Rule 56(e)(2), an opposing party "may not" rely on allegations in its own pleadings and "must" set out "specific facts" in affidavits or the supplemental materials described in Rule

5

56(e)(1). Statements made in McAlpine's responsive pleadings to a motion for summary judgment could not establish a genuine issue of fact. The district court did not err by holding McAlpine to the requirements of Rule 56.

## B.    Standing to Bring Suit

McAlpine appeals the district court's finding that he lacked standing to pursue his conversion claim because HCC owned the airplane. Standing requires an injury in fact, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations and quotation marks omitted).

"The party invoking federal jurisdiction bears the burden of establishing [standing]." *Id.* (citations omitted). McAlpine cannot meet his burden with "mere allegations," but must "'set forth' by affidavit or other evidence 'specific facts.'" *Id.* (quoting FED. R. CIV. P. 56(e)). That is, McAlpine must raise a genuine issue of material fact as to standing. *Croft v. Governor of Tex.*, 562 F.3d 735, 746 (5th Cir. 2009). Although we consider the evidence in the light most favorable to the nonmoving party, "once the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citation omitted).

At issue here is whether McAlpine personally suffered an injury in fact. Defendants contend, and the district court found, that the airplane belonged to HCC and that McAlpine suffered no injury himself. McAlpine argues that: (1) he did in fact own the airplane, and (2) even if he did not own the airplane, he had a "right of possession" that Defendants violated.

1.    **Whether McAlpine established a fact issue concerning ownership of the airplane**

"Generally, corporations have an existence separate and distinct from that of their shareholders . . . and an individual shareholder cannot secure a personal recovery for an alleged wrong done to a corporation . . ." *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 243 (5th Cir. 1993) (quotation omitted).  This remains true even for close corporations and sole shareholders.  *Id.*

McAlpine contends that he presented sufficient evidence to raise a genuine issue of material fact as to whether he owned the airplane.  At all relevant times, HCC was the registered owner of the airplane.  McAlpine and his father testified in depositions that McAlpine's father transferred ownership of HCC to McAlpine in 2003 or 2004.  In response to Defendants' motions for summary judgment, McAlpine provided the district court with a handwritten, notarized statement by his father purporting to transfer all HCC stock to McAlpine.  Assuming that ownership of HCC passed from father to son, McAlpine was, at most, a shareholder in HCC, which owned the airplane.  Although McAlpine may have presented sufficient competent evidence to raise a fact issue as to the ownership of HCC, he has not presented any evidence creating a fact issue as to the ownership of the airplane.[1]

In the alternative, McAlpine contends that HCC was "defunct" and thus the aircraft automatically distributed to him as the sole shareholder of HCC.  McAlpine did not, however, present any evidence at summary judgment that supported these assertions.[2]  McAlpine therefore failed to "come forward with

---

[1] McAlpine also argues that, because shareholders are equitable owners of a corporation's assets, as HCC's sole owner, he could have given the airplane to himself without following any corporate formalities.  McAlpine did not suggest below, and he does not claim before this Court, that he actually did cause HCC to give him the airplane. A legal hypothetical, standing without factual support, cannot create a genuine fact issue.

[2] McAlpine contends that he was not required to present evidence of HCC's dissolution because it was a Delaware corporation and Delaware corporate law does not necessitate a formal dissolution.  McAlpine did not raise this argument below, and it is therefore waived.

competent summary judgment evidence establishing the existence of a material factual dispute." *Clark*, 110 F.3d at 297 (citations omitted).

### 2.    Whether McAlpine established a fact issue concerning his right to immediate possession of the aircraft

McAlpine next argues that he presented sufficient evidence to establish a fact issue as to his right to possess the airplane. Defendants, he contends, did not challenge his right to possession at summary judgment, but instead only challenged his ownership of the plane. Therefore, McAlpine argues that he was not required to set forth evidence that he had a legal right to possess the airplane, and that the district court erred by granting summary judgment to Defendants on the conversion claim.

As discussed above, "once the moving party meets its initial burden of pointing out the absence of a genuine issue for trial, the burden is on the nonmoving party to come forward with competent summary judgment evidence establishing the existence of a material factual dispute." *Id.* (citations omitted). In addition, "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Vaughner v. Pulito*, 804 F.2d 873, 878 n.2 (5th Cir. 1986) (citation omitted).

Defendants' motions for summary judgment, and their briefs in support, covered more than McAlpine claims. Defendants generally denied McAlpine's standing to bring suit, not merely as an owner of the airplane. With McAlpine's lack of evidence in support of standing thereby "point[ed] out," McAlpine had an obligation to set out facts showing a genuine fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

A right to possession is an incident of an interest in property at the time of its conversion. *Jones v. Boswell*, 250 S.W.3d 140, 143–44 (Tex.

App.—Eastland 2008, no pet.).[3] As discussed above, however, McAlpine did not raise a fact issue as to whether he owned the airplane or had legal possession of it. Nor did he claim, or present evidence to the effect that he held a lien or any other interest in the property that would entitle him to its immediate possession. Therefore, he failed to create a fact issue, and Defendants are entitled to summary judgment.[4]

## C.    The Motion to Alter or Amend the District Court's Judgment

Finally, McAlpine argues that the district court erred by denying his motion to alter or amend the judgment under Rule 59(e) despite his presentation of newly discovered evidence and the need to correct a clear error of law. In his motion to alter or amend the judgment, McAlpine raised several arguments concerning what he considered to be the district court's failure to take into account all of the evidence in the light most favorable to him at summary judgment. He accused Defendants of perjury, malice, and acting in bad faith. He also accused the court of failing to enforce Defendants' discovery obligations, improperly granting a protective order in favor of Defendants, and allowing two of his attorneys to withdraw from his representation without his signed consent and without hearings. In an appendix to his motion, he presented photographs allegedly showing damage to the airplane that had not been part of the summary judgment record and deposition testimony concerning his fraud and misrepresentation claims, which are not part of this appeal.

The district court found that McAlpine failed to present any new evidence

---

[3] In addition, as McAlpine notes, such a right may be established by actual possession at the time of the conversion. *Gardner v. Jones*, 570 S.W.2d 198, 200–01 (Tex. App.—Houston [1st Dist.] 1978, no writ). However, in this case, the alleged conversion occurred after McAlpine transferred possession of the airplane.

[4] Because the district court did not err when it found that McAlpine did not have standing to pursue his conversion claim, we do not address the district court's determination that McAlpine presented no evidence of damages stemming from Defendants' alleged actions.

that had been unavailable at the time of summary judgment and continued to fail to present any competent evidence of his ownership of the airplane. McAlpine concedes that his Rule 59(e) motion presented only one piece of "new" evidence: deposition testimony that allegedly supports Porsche's involvement in the alleged conversion of the plane, and the continuation of the retrofitting program after Hurricane Charley.  Porsche, however, never contested its involvement in the program. The record also supports the continuation of the retrofitting program.  Neither fact, however, supports McAlpine's fraud and misrepresentation claims, which he premised on the inadequacy of the retrofittings performed after Hurricane Charley.

McAlpine also contends that he was due Rule 59(e) relief to correct a "manifestly unjust" result.  He argues that the district court clearly erred by finding that he did not have standing because the district court (1) improperly relied on FAA registration data, (2) ignored evidence that HCC had become defunct, and (3) ignored evidence of damages.  As to McAlpine's first argument, although the summary judgment order mentions the airplane's FAA registration, it relies on the *absence* of evidence set forth by McAlpine.  As to his second, McAlpine brought forth no evidence that HCC had dissolved, but only made an assertion in a brief in opposition to summary judgment.  And as to his third, McAlpine misstates the district court's finding at summary judgment, as it found that McAlpine had not presented any competent evidence that he had suffered damages as a result of Defendants' actions.

McAlpine's motion to alter or amend the judgment merely recapitulated his prior arguments and claims, while accusing the district court and Defendants of improper conduct. The court did not abuse its discretion by denying it.

## IV.  CONCLUSION

McAlpine failed to produce sufficient evidence to raise a triable issue of fact concerning his standing to bring this suit.  The district court correctly

No. 09-10407

granted summary judgment to Defendants and did not abuse its discretion in denying McAlpine's Rule 59(e) motion.  For these reasons, we AFFIRM.